UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DANIEL LEE MACIAS,

     Plaintiff,

v.                                       Case No. 3:18cv1574-LC-HTC

CHAD EARLY, et al.,

     Defendants.

_____/

<u>REPORT AND RECOMMENDATION</u>

     Plaintiff, Daniel Lee Macias ("Macias"), proceeding *pro se* and *in forma pauperis*, has filed this suit under 42 U.S.C. § 1983 against Defendants for violating his Fourth Amendment rights. ECF Doc. 1. Defendants Investigator Cameron Johnson and Deputy Gaither have filed a Motion to Dismiss and Request for Judicial Notice (ECF Doc. 17).[1] The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). Upon consideration of the parties' written submissions, including Macias's response (ECF Doc. 20), and the relevant law, the undersigned recommends that the Motion to Dismiss be GRANTED.

---

[1] Macias also names Officer Chad Early as a Defendant. Early, however, has not been timely served and thus the claims against him are subject to dismissal for the reasons set forth herein and, also, under Federal Rule of Civil Procedure 4(m).

## I.    MACIAS'S FOURTH AMENDMENT CLAIMS

Macias is a prisoner currently confined at Suwannee Correctional Institution. At the time he initiated this action, Macias was a pretrial detainee at the Walton County Jail. The Defendants are employees of the Walton County Sheriff's Office ("WCSO"). Macias's complaint sets forth the factual allegations that follow, the truth of which are accepted for purposes of determining Defendants' motion to dismiss.

On November 13, 2016, two (2) WCSO deputies, including Defendant Early, arrived at a residence shared by Macias, his girlfriend, Haley Page ("Page"), and Joseph Beeler ("Beeler") to execute a misdemeanor arrest warrant on Beeler. The deputies believed that Beeler was located inside the residence. Page answered the door and did not give consent for the deputies to enter; nonetheless, Early forcibly entered the residence. Macias says no exigent circumstances justified immediate entry, and the deputies did not have a valid search warrant or probable cause to believe illegal activity was taking place.

Defendant Gaither then arrived at the residence and ordered Macias to present photo identification. Macias asserts Gaither lacked the reasonable suspicion necessary for the detention and had no immediate need for Macias to provide proof of identity. Deputy Gaither then followed Macias for "officer safety" to his bedroom to retrieve the identification. ECF Doc. 1 at 6.

That same day, Defendant Investigator Johnson executed an affidavit of probable cause for a search warrant of the residence. ECF Doc. 20 at 7. With the search warrant in hand, the deputies seized items from Macias's room, including various digital media storage devices. Macias contends the seized digital medial storage devices "were not immediately identifiable as contraband." ECF Doc. 1 at 6.

As a result of the items obtained during the search, Macias was charged with felony possession and several drug related offenses. *See State of Florida v. Macias*, Case No. 16-CF-868, ECF Doc. 17-2 at 2. A subsequent computer forensic analysis of the digital devices seized during the search also revealed images of child pornography. Thus, Macias was separately arrested and charged with child pornography related offenses. *See State of Florida v. Macias*, Case No. 17-CF-470, ECF Doc. 17-3 at 2. Macias filed a motion to suppress the evidence obtained from the search warrant in both state court cases and the motion was granted.[2] ECF Doc.

---

[2] Although the state court found that the State failed to present evidence to show that the search of Macias's residence was "lawfully executed," the state court did not provide a basis for its determination. Importantly, the fact the state court granted Plaintiff's motion to suppress does not establish a violation a federal law. *See Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002) ("Section 1983 does not create a remedy for every wrong committed under the color of state law, but only for those that deprive a plaintiff of a federal right."); *cf. Pierre v. City of Miramar, Fla., Inc.*, 537 F. App'x 821, 826 n.6 (11th Cir. 2013) ("Although the existence of probable cause was not established under Florida law, federal law does not restrict the probable cause analysis to conduct witnessed in person by law enforcement officers.").

1 at 9-16.  The charges were also subsequently dismissed.  *See* Dockets, ECF Doc.

17-2 at 2-6 and 17-3 at 2-4.

Based on the foregoing, Macias alleges Defendants violated the Fourth

Amendment, as well as sections Four, Nine, Twelve, and Twenty-Three of Article 1

of the Florida Constitution.  Specifically, Macias takes issue with Early's initial entry

into the residence; Gaither's subsequent detention of him and entry into Macias's

bedroom; and Johnson's probable cause affidavit for the search warrant.[3]  As relief,

Macias seeks damages for defamation of character and mental anguish.  He also asks

that the WCSO publicly recant their statements regarding his arrest.  The WCSO,

however, is not a party to this action.

## II.    LEGAL STANDARD

In considering a motion to dismiss for failure to state a claim, the Court reads

a plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519,

520-21 (1972), and accepts "[a]ll well-pleaded facts in plaintiff's complaint and all

reasonable inferences drawn from those facts . . . as true."  *McGinley v. Houston*,

361 F.3d 1328, 1330 (11th Cir. 2004) (citation omitted).  "There are a few exceptions

to this rule, such as where the facts alleged are internally inconsistent or where they

---

[3] Macias alleges in response to the Motion to Dismiss that Gaither and Johnson should have intervened in preventing Early's wrongful entry.  Because this allegation is not included in the complaint, the Court need not address it.  Regardless, because the undersigned finds that Early's entry was not wrongful, even had Macias asserted this claim in his complaint, it would fail.

run counter to facts of which the court can take judicial notice." *Ellen S. v. Fla. Bd. of Bar Exam'rs*, 859 F. Supp. 1489, 1492 (S.D. Fla. 1994) (citation omitted). Further, mere "labels and conclusions" are not accepted as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (noting courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

As the Supreme Court reiterated in *Iqbal*, although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility the defendant acted unlawfully is insufficient to survive dismissal for failure to state a claim. *Id.* The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, or, "nudge[] the[] claim[] across the line from conceivable to plausible . . . ." *Id.* at 570. Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than unlawful conduct the

plaintiff would ask the court to infer." *Am. Dental Ass'n v. Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

## III.    REQUEST FOR JUDICIAL NOTICE

Before discussing the merits of the motion to dismiss, the Court will address the request for judicial notice.  The Defendants ask that the Court take judicial notice of the filings and dockets for Beeler's state court case, Case No. 16000393CTAXMX and Macias's state court cases: Case No. 16-CF-868, and No. 17-CF-470.  The undersigned finds that judicial notice is appropriate.  *See* Fed. R. Evid. 201; *see e.g., United States v. Berrojo*, 628 F.3d 368, 369 (5th Cir. 1980) ("The doctrine of judicial notice permits a judge to consider a generally accepted or readily verified fact as proved without requiring evidence to establish it.").  The undersigned also finds that it is appropriate for the Court to consider the dockets, submissions and filings in those state court cases in determining this motion to dismiss.  *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) ("a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed.  'Undisputed' in this context means that the authenticity of the document is not challenged.").

## IV.   DISCUSSION

Under 42 U.S.C. §1983, an individual who has been deprived of a right guaranteed to him by the Constitution or laws of the United States under color of state law, has a right to seek appropriate relief in a United States District Court.  The Fourth Amendment provides "the right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation...."  U.S. Const. amend. IV.  Although a violation of the Fourth Amendment can form the basis of a § 1983 action, Defendants argue that they are immune from liability.  For the reasons set forth below, the undersigned agrees.

### A. Qualified Immunity

Because Macias sues the Defendants in their individual capacities, his claims are subject to the doctrine of qualified immunity.  To receive qualified immunity, the public officials, "must first prove that [they were] acting within the scope of [their] discretionary authority when the allegedly wrongful acts occurred."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). Here, Macias does not dispute the Defendants were acting within the scope of their discretionary authority and under color of law at all material times.  ECF Doc. 1 at 5.

The Supreme Court has established a 2-pronged test for evaluating a claim of qualified immunity: (1) whether a constitutional right has been violated on the facts alleged; and (2) whether the right was "clearly established." *Saucier v. Katz*, 533 U.S. 194 (2001). The Court may exercise its sound discretion in deciding which of the two prongs should be addressed first in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Court may grant qualified immunity if the Plaintiff fails to carry his burden on either prong. *See, e.g., Id.* at 242-44 (evaluating only *Saucier's* second prong and holding that law enforcement officers were entitled to qualified immunity because the unlawfulness of their conduct was not clearly established).

In Fourth Amendment cases an officer is entitled to qualified immunity if he had arguable probable cause for his conduct i.e., for the search, seizure or arrest. *See Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009). Arguable probable cause exists where reasonable officers possessing the same knowledge and in the same circumstances could have believed probable cause existed to arrest; even if ultimately that belief was mistaken. *Id.; Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003). "Probable cause is defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Id.* (citing *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)).

    1.  <u>Entry Into Macias's Residence</u>

According to Macias, Early violated his Fourth Amendment rights when he "made forced entry into the residence, without obtaining consent, and against the objections of Haley Page, who opened the front door." ECF Doc. 20 at 2. He further contends the entry was unlawful because there was no search warrant, probable cause of illegal activities or exigent circumstances. ECF Doc. 20 at 2. Macias's "forcible entry" claim, however, fails as a matter of law because, according to Macias's allegations, Early arrived at the residence, possessed with a valid arrest warrant for Beeler, who Early believed was inside the home. ECF Doc. 1 at 5; 20 at 2.

"For Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). Additionally, section 901.19(1) Florida Statutes (2000) provides:

> If a peace officer fails to gain admittance after she or he has announced her or his authority and purpose in order to make an arrest either by warrant or when authorized to make an arrest for a felony without a warrant, the officer may use all necessary and reasonable force to enter any building or property where the person to be arrested is or is reasonably believed to be.

"[T]he officers' assessment need not be correct; rather, they need only 'reasonably believe' that the suspect resides at the dwelling to be searched and is currently present at the dwelling," *V.P.S. v. State*, 816 So. 2d 801, 803 (Fla. 4th DCA 2002);

Thus, because Early was at the residence to execute an arrest warrant on Beeler, who he believed to be inside the residence, Early did not need Page's consent to enter the residence; nor was his entry dependent on the existence of probable cause of an illegal activity inside the residence or exigent circumstances. *See McClish v. Nugent*, 483 F.3d 1231, 1240 (11th Cir. 2007) (consent and exigent circumstances are necessary to justify a *warrantless* entry into a home). This is not a case where officers attempted to execute an arrest warrant on the residence of a third party. *See O'Rourke v. Hayes*, 378 F.3d 1201 (11th Cir. 2004) (citing *Steagald v. United States*, 451 U.S. 204, 205-06 (1981)) (absent exigent circumstances, officers must have a search warrant to enter a third party's home to make an arrest). There is no dispute Beeler shared the residence with Page and Macias. Thus, the existence of Beeler's arrest warrant provided Early with probable cause to enter the residence. *See Steagald*, 451 U.S. at 213 ("the purpose of a warrant is to allow a neutral judicial officer to assess whether the police have probable cause to make an arrest or conduct a search"). Moreover, Early's belief that Beeler was inside the residence was correct, as that was where Beeler's arrest was made. ECF Doc. 17-2 at 7 (Beeler was arrested inside the residence and found with a pill bottle containing cocaine and approximately $1462.00 on his person and a set of digital scales on a dresser in his room).

In Macias's response, he relies on *Connor v. State*, 641 So. 2d 143 (Fla. 4th DCA 1984) and *Alvarez v. State,* 573 So. 2d 400 (Fla. 3rd DCA 1991).  ECF Doc. 20 at 2.  Neither of those cases are applicable as a warrant was lacking in both cases. The court in *Connor* addressed an officer's entry into a residence *without a warrant* to arrest a defendant for a misdemeanor.  *See Connor*, 641 So. 2d at 144.  *Similarly,* the *Alvarez* court addressed whether items seized from a *warrantless* search and seizure should be suppressed.  *See Alvarez,* 573 So. 2d at 401.

Macias also alleges that Early used "excessive force" to enter the residence. This allegation, however, is merely conclusory.   *Iqbal*, 556 U.S. at 680-81 (explaining that conclusory allegations are not entitled to a presumption of truth). Macias's complaint is devoid of any factual allegations regarding the alleged force that was used.  In Macias's response to Defendants' motion to dismiss he states that Early "forced entry pushing Haley Page back from the door when she was six months pregnant so he could make entry after objections."  ECF Doc. 20 at 10.  Although this is not in Macias's complaint and is further not made under oath, even assuming it to be true – it is insufficient to state a claim for excessive force under the Fourth Amendment, and Macias does not have standing to bring such a claim on Page's behalf.

Reasonableness is always the touchstone of a Fourth Amendment analysis, including one for excessive force, and "reasonableness is generally assessed by

carefully weighing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Mastin*, No. 2:16CR542-MHT-SRW, 2018 WL 1005158, at *10 (M.D. Ala. Jan. 2, 2018) (quoting *City of Los Angeles, Cal. v. Mendez,* 137 S.Ct. 1539, 1549 (2017)). "The issue of reasonableness centers on whether the officer's actions are "objectively reasonable" in light of the facts and circumstances with which he is faced, without regard to the officer's underlying intent or motivation. Whether the use of force is reasonable 'must be judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight.'" *Greene v. Knight,* 564 F. Supp. 2d 604, 612-13 (N.D. Tex. 2008). Moreover, "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor,* 490 U.S. 386, 396 (1989). Based on the facts alleged, the undersigned finds that Early's entry into the residence was not unreasonable, particularly given Beeler's presence inside the residence.

Accordingly, in the absence of a constitutional violation committed by Early, Macias's Fourth Amendment claim against Early is subject to dismissal under the qualified immunity doctrine.

2.  <u>Macias's Detention Inside the Residence</u>.

Once inside the residence, Macias alleges that Gaither violated his Fourth Amendment rights by requiring him to provide a photo identification  ECF Doc. 1 at 5-6.  Macias equates this to an "initial detention of Plaintiff inside his home." ECF Doc. 20 at 17.  He further contends there was "no necessity for Defendant Deputy Gaither to insist upon following Plaintiff into his separate bedroom for 'officer safety,'" as "officer safety is not a designated appropriate exception to the warrantless search and seizure requirements." ECF Doc. 20 at 17.  Macias's position here is also misplaced because Gaither's presence at the residence, like Early's, was to carry out an arrest warrant on Beeler.

The Eleventh Circuit has identified three categories of police-citizen encounters which invoke the Fourth Amendment: (1) "police-citizen communications involving no coercion or detention"; (2) "brief seizures or investigative detentions"; and (3) "full-scale arrests." *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989).   The first category raises no Fourth Amendment implications.  *See Gomez v. United States*, 601 F. App'x 841, 845-46 (11th Cir. 2015).  The second category encompasses temporary detentions "where an officer has a 'reasonable articulable suspicion that criminal activity is afoot,' or where an exception to general Fourth Amendment principles exist." *Id.* (internal citations omitted) (quoting *Illinois v. Wardlow*, 528 U.S. 119 (2000)).  One such

exception specifically recognized by the Supreme Court is when an officer needs to detain individuals present at a residence during the execution of a search warrant. *See*, *e.g.*, *Michigan v. Summers*, 452 U.S. 692, 705 (1981).

In *Summers*, the Supreme Court posited the following three law enforcement interests justifying detention: (1) "preventing flight in the event that incriminating evidence is found"; (2) "minimizing the risk of harm to the officers"; and (3) enabling "the orderly completion of the search." *Summers*, 452 U.S. at 702-03; *Gomez*, 601 F. App'x at 846. As stated by the *Summers* Court, "[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Id.* Moreover, the Supreme Court doubled down on *Summers* in *Bailey v. United States*, noting that the categorical "rule in *Summers* extends farther than some earlier exceptions because it does not require law enforcement to have particular suspicion that an individual is involved in criminal activity or poses a specific danger to the officers." *Bailey v. United States*, 568 U.S. 186, 193 (2013).

The Eleventh Circuit has expressly applied the *Summers'* detention exception to the execution of an arrest warrant. *See Gomez* 601 F. App'x at 847. In *Gomez*, the Court upheld the detention of a plaintiff outside his residence in the course of executing an arrest warrant for plaintiff's father at their shared residence. *Id.* at 849. Like the deputies here, upon their initial arrival, the officers in *Gomez* presented the

plaintiff with basic inquiries and requested identification. *Id.* at 843. The Court concluded, "[the officer] lawfully and reasonably directed and controlled the movement of [plaintiff] in conjunction with the safe and efficient execution of the arrest warrant." *Id.* Moreover, the Court concluded, "even if [the officer] violated [plaintiff's] Fourth Amendment rights by temporarily detaining him in this case in the absence of reasonable suspicion or probable cause, it would not have been so 'clear to a reasonable officer [their] conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Whittier v. Kobayashi*, 581 F.3d 1304, 1308 (11th Cir. 2009)).

Consistent with *Gomez* and *Summers,* the undersigned finds that Gaither's brief and temporary detention of Macias in the residence during the execution of Beeler's arrest warrant did not violate Macias's Fourth Amendment rights. While Macias contends, "there was no observable probable cause or observable reasonable suspicion of criminal activities that would support a seizure of his person," neither was required under the facts as alleged. ECF Doc. 1 at 5; *Bailey*, 568 U.S. at 193. Moreover, Macias acknowledges in his allegations that Gaither followed him into Macias's bedroom "for officer safety." ECF Doc. 1 at 6; ECF Doc. 17-2 at 7 ("Deputy Gaither followed Macias to his room for safety reasons to retrieve his ID."). As the Supreme Court recognized in *Summers*, "minimizing the risk of harm to officers" is a rationale for effectuating a detention. *Summers*, 452 U.S. at 702.

"Serving a warrant can quickly escalate into a dangerous situation for the officer and the person to be served, and this is true whether an officer is serving a misdemeanor or felony warrant. The officer does not know what to expect; the person to be served may readily comply with the officer's instructions, flee, resist and fight, or use deadly force against the officer. In essence, in any police situation, especially one that is tense, an officer has to be vigilant and prepared for how a person may react." *Greene*, 564 F. Supp. 2d at 613. Here, the deputies arrived to Macias's residence with an arrest warrant for Beeler. When they got there, multiple people were present. To effectuate the warrant they needed to identify the occupants of the residence and to determine if the suspect was inside the residence. Asking Macias for his identification and then following him into a bedroom while he obtained his identification, were reasonable and necessary to safely carry out the arrest warrant. Indeed, after a search warrant was obtained and executed, a firearm belonging to Macias was found in the residence, resulting in Macias's arrest for possession of a firearm by a convicted felon. ECF Doc. 17-2 at 2, 18.

Accordingly, absent a constitutional violation (or a clear violation of law) by Gaither, Macias's Fourth Amendment claim against Gaither is also subject to dismissal under the doctrine of qualified immunity.

3.  The Search Warrant

Once Gaither entered Macias's bedroom he "observed a glass smoking device in plain view in the room."  ECF Doc. 17-2 at 7.  Macias argues that he did not consent to have his bedroom searched; however, consent was not needed because the glass smoking device was in plain view[4] and no items were seized until after a search warrant was executed.  ECF Doc. 20 at 4.

Defendant Investigator Johnson executed a probable cause affidavit for a search warrant of Macias's residence.  The affidavit stated that during the arrest of Beeler, deputies observed a "glass smoking device in plain view in the room," and "a mirror containing a razor blade and lines of white powder suspected to be cocaine in a bathroom along with other items of drug paraphernalia throughout the residence."  ECF Doc. 17-2 at 7.  The deputies also found "a pill bottle containing cocaine and approximately $1462.00 US Currency on [Beeler] and a set of digital scales on a dresser in [Beeler's] room."  ECF Doc. 17-2 at 7.  Johnson stated in the affidavit that the items observed were "evidence of a crime, to wit: SALE OR

---

[4] The plain view doctrine provides that officers may seize items if: (1) "the officers are lawfully in a position from which they view an object, (2) the incriminating character of that object is immediately apparent, and (3) the officers have lawful right of access to the object."  *United States v. Gomez*, 807 F. Supp. 2d 1134, 1141 (S.D. Fla. 2011) (citing *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)); *see also United States v. Hromada*, 49 F.3d 685, 690 (11th Cir. 1995) (finding "[i]f an officer has lawfully executed a valid arrest warrant, he is not required to shut his eyes to contraband in plain view").

POSSESSION OF A CONTROLLEDSUBSTANCE contrary to Chapter 893.13 of the Florida State Statutes."  ECF Doc. 17-2 at 7.

The search warrant authorized the seizure of "[i]llegal narcotics, drug paraphernalia, cell phones, computers, SD cards, digital media devices, scales, and any paperwork or packaging related to the ordering or receiving of illegal narcotics," and further authorized law enforcement to "conduct a search and analysis, or to delegate the search and analysis to a Computer Forensic Analyst and/or Digital Evidence Recovery Investigator, on-scene or off-site at another secure location." ECF Doc. 17-2 at 13.

When deputies executed the search warrant they seized a number of items, including the following digital storage devices: several SD cards, numerous laptops, numerous cell phones, an ipod, two (2) desktops, an Xbox and a computer tower. ECF Doc. 17-2 at 18-20.  Pursuant to the search warrant, a computer analysis was conducted, which identified images related to child pornography on digital storage devices belonging to Macias.

(a) Investigator Johnson's Probable Cause Affidavit

Macias alleges Investigator Johnson omitted material information in the search warrant affidavit.  ECF Doc. 20 at 5.  Macias contends "[i]n the statement given in the Affidavit, the Defendant Cameron Johnson failed to mention that unlawful intrusion by the other two Defendants Chad Early and Phillip Gaither.  In

spite of the Defendant Cameron Johnson being aware of the unlawful intrusion, he with malice falsified his statement to possibly obtain a warrant for search." *Id*. The Supreme Court has held that the Constitution prohibits an officer from making perjurious or recklessly false statements or omissions in the information put forth to establish that probable cause. *Franks v. Delaware*, 438 U.S. 154, 156, 165-71 (1978). Here, however, Macias's argument necessarily fails because, as stated above, the undersigned finds that Early's entry into the residence and Gaither's subsequent detention of Macias were not "unlawful." Additionally, Macias does not allege that Johnson believed Early or Gaither's entry to be unlawful. *Id.* at 165 (while statements do not have be to be "objectively accurate," they must "be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true").

(b) The Search

Next, Macias asserts the items seized by officers pursuant to the search warrant, namely the digital media storage devices, had no immediately apparent connection to "drug related activities or other criminal activities," and thus violated his Fourth Amendment rights. According to Macias, "[t]he search only pertained to narcotics possession, or possession and distribution of controlled substances, nothing in the probable cause narrative suggested that the [Plaintiff] was engaged in

possession of improper or illegal digital content including any photographs, videos, or related images." *Id.*

As an initial matter, Macias's Fourth Amendment claim relating to the execution of the search warrant necessarily fails as to these Defendants because Macias has not alleged that any of the Defendants were involved in the search or seizure of the digital media devices.  Indeed, based on the "Property/Evidence Inventory" of the items seized (ECF Doc. 17-2 at 18), of the named Defendants, only Officer Johnson was involved in the execution of the search warrant, and he was not responsible for seizing any of the digital storage devices.  ECF Doc. 1 at 7.

Regardless, the search warrant at issue specifically authorized the seizure of "computers, SD cards, digital media devices, scales, and any paperwork or packaging related to the ordering or receiving of illegal narcotics."[5]  ECF Doc. 17-2 at 13.  Macias does not dispute the warrant authorized the seizure of digital devices. Instead, he argues, the criminal nature of the digital devices was not immediately apparent.  That requirement, however, applies only to items seized outside a warrant under the plain view exception.  *See United States v. Garcia*, 496 F.3d 495, 510 (6th Cir. 2007).  The fact that an analysis of the storage devices seized revealed images of child pornography rather than evidence relating to narcotics does not take the

---

[5] The warrant was not overly broad.  *See United States v. Smith*, 918 F.2d 1501, 1507 (11th Cir. 1990) (warrant which authorized the seizure of "cocaine, documents, letters, photographs, business records, and *other evidence relating to narcotics trafficking*" was not overly broad).

devices outside the scope of the warrant. It is not unusual for officers to come across evidence of child pornography when reviewing electronic evidence for drug-related activity. *See e.g., United States v. Walser*, 275 F.3 981, 986-87 (10th Cir. 2001) (officer did not exceed the scope of a warrant authorizing search for records of drug transactions on defendant's computer when he opened an .avi file and discovered child pornography images).

(c) Macias's Arrest for Possession and Transmission of Child Pornography

Macias alleges that his arrest for possession and transmission of child pornography violated the Fourth Amendment because it was based on the illegal seizure of items that were not authorized by the search warrant. As discussed above, the undersigned finds that the seizure of the digital devices did not exceed the scope of the search warrant.[6] Moreover, Macias's Fourth Amendment claim based on his arrest for possession and transmission of child pornography necessarily fails as a matter of law as to these Defendants because Macias has not alleged that any of the Defendants arrested him for these offenses.[7] Macias's arrest for child pornography

---

[6] Even if the digital storage media containing child pornography were unlawfully seized, the exclusionary rule, which encompasses the "fruit of the poisonous tree" doctrine, does not apply to civil cases. *See Black v. Wigington*, 811 F.3d 1259, 1268 (11th Cir. 2016) ("We now join our sister circuits and hold that the exclusionary rule does not apply in a civil suit against police officers."). Thus, the images retrieved on the digital devices would nonetheless serve as arguable probable cause for Macias's arrest, regardless of the state court's order granting Macias's motion to suppress.

[7] To the extent Macias contends that the arrest warrant affidavit for his arrest on child pornography charges contained false information because it referenced a thumb drive found inside an Xbox

charges was done pursuant to a warrant and thus even if these Defendants were the ones who carried out the arrest, they would be entitled to immunity. *See e.g., Turner v. Raynes*, 611 F.2d 92, 93 (5th Cir. 1980) (qualified immunity upheld for Sheriff who did no more than execute an arrest warrant valid and regular on its face); *Pickens v. Hollowell*, 59 F.3d 1203, 1207 (11th Cir. 1995) ("[p]olice officers have no responsibility to determine the validity of a potential defense when executing a valid arrest warrant").

Accordingly, it is respectfully RECOMMENDED:

1.    That Defendants' Motion to Dismiss (ECF Doc. 17) be GRANTED.

2.    That Plaintiff's claims against Defendants Early, Gaither and Johnson be DISMISSED.

3.    That the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims.[8]

4.    That the clerk be directed to close this case.

---

retrieved from his bedroom, such an allegation does not support a constitutional violation as to these Defendants as they did not execute the affidavit. ECF Doc. 17-3 at 9.

[8] The Court's jurisdiction over this case is based on a federal question – the alleged violation of Macias's civil rights under 42 U.S.C. §1983. Macias has also alleged state-law claims against Defendants for various violations of the Florida Constitution. Finding that Macias's federal claims should be dismissed, the undersigned recommends that the state claims also be dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.") (citations omitted).

At Pensacola, Florida, this 17th day of July, 2019.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.